## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| KASHYAP P. PATEL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. No. 1:23-cv-2699 |
| v. | : | |
| | : | The Honorable Amit P. Mehta |
| JESSIE LIU, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

_____

## DEFENDANTS' MOTION TO DISMISS

The defendants, former United States Attorney for the District of Columbia Jessie Liu, former Deputy Attorney General Rod Rosenstein, former Principal Associate Deputy Attorneys General Robert Hur and Edward O'Callaghan, and Federal Bureau of Investigation Director Christopher Wray, move to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. The complaint alleges a single Fourth Amendment claim brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). That claim should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief may be granted. In addition, the plea for equitable relief warrants dismissal under Rule 12(b)(1) for lack of jurisdiction. The specific grounds for dismissing the claim are set forth in the accompanying memorandum of points and authorities.

A proposed order is attached.

Dated:        February 16, 2024                Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
(202) 616-4314 (fax)
siegmund.f.fuchs@usdoj.gov

Attorneys for the Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KASHYAP P. PATEL, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 1:23-cv-2699 |
| | : | |
| JESSIE LIU, *et al.*, | : | The Honorable Amit P. Mehta |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
(202) 616-4314 (fax)
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendants

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

STATEMENT ................................................................................................. 2

STANDARD OF REVIEW ............................................................................. 4

ARGUMENT .................................................................................................. 5

I.  Count One should be dismissed because special factors preclude recognizing a *Bivens* claim related to the subpoenaing of electronic records held by a third-party service provider. ............................... 5

    A.  Patel's claim presents a new *Bivens* context. .................................. 8

    B.  Special factors counsel hesitation against extending *Bivens* to claims challenging the subpoenaing of electronic records. .......... 10

II.  The defendants are entitled to qualified immunity. ................................ 18

    A.  The complaint fails to allege a constitutional violation because a grand jury subpoena does not require probable cause. ................. 19

    B.  The complaint fails to allege the violation of a clearly established constitutional right. ........................................................................ 20

III.  Plaintiff is not entitled to injunctive relief or attorney's fees. ........... 25

    A.  Equitable relief is not available on a *Bivens* claim. ....................... 26

    B.  Plaintiff lacks Article III standing to seek injunctive relief. ........ 27

    C.  The Court lacks jurisdiction to enjoin the defendants' participation in future judicial or investigatory proceedings or to order the destruction of records. ....................................................... 28

CONCLUSION ............................................................................................. 30

i

## TABLE OF AUTHORITIES

Cases

*Ahmed v. Weyker,*
  984 F.3d 564 (8th Cir. 2020) ................................................................................. 15
*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ................................................................................... 18, 21
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................... 2, 4, 26
*\*Attkisson v. Holder,*
  925 F.3d 606 (4th Cir. 2019) .......................................................... 9, 10, 13
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................. 4
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
  403 U.S. 388 (1971) ....................................................................... 1, 4, 5
*Black Lives Matter D.C. v. Trump,*
  544 F. Supp. 3d 15 (D.D.C. 2021)..................................................... 27
*Brigham City v. Stuart,*
  547 U.S. 398 (2006) ............................................................................ 19
*Brown v. Sprint Corp. Sec. Specialist,*
  No. 17-2561, 2019 U.S. Dist. LEXIS 16641 (E.D.N.Y. Jan. 31, 2019)................... 23
*Buchanan v. Barr,*
  71 F.4th 1003 (D.C. Cir. 2023) ..................................................... 7, 10
*Cain v. Rinehart,*
  No. 22-1893, 2023 U.S. App. LEXIS 18993 (6th Cir. July 25, 2023) ................. 13
*Cantú v. Moody,*
  933 F.3d 414 (5th Cir. 2019) ................................................................ 9
*Carlson v. Green,*
  446 U.S. 14 (1980) ................................................................................ 5
*Carpenter v. United States,*
  585 U.S. 296 (2018) ............................................................................ 24
*Christoforu v. United States,*
  842 F. Supp. 1453 (S.D. Fla. 1994) ................................................... 30
*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .............................................................................. 27
*Corr. Servs. Corp. v. Malesko,*
  534 U.S. 61 (2001) ........................................................................... 6, 26
*Couden v. Duffey,*
  826 F. Supp. 2d 711 (D. Del. 2011) .................................................. 26
*\*Cuney v. Choi,*
  No. 22-154, 2022 U.S. Dist. LEXIS 201968 (N.D.N.Y. Nov. 7, 2022) .............. 9
*Cutler v. U.S. Dep't of Health & Hum. Servs.,*
  797 F.3d 1173 (D.C. Cir. 2015)............................................................ 5

ii

*Daugherty v. Sheer*,
  891 F.3d 386 (D.C. Cir. 2018)...................................................................... 21

*Daughtry v. Englade*,
  No. 22-240, 2023 U.S. Dist. LEXIS 202182 (E.D. Tex. Oct. 17, 2023).................... 14

*Davis v. Passman*,
  442 U.S. 228 (1979) ............................................................................... 5, 17

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011)..................................................................... 27

*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987)............................................................. 28, 29, 30

*Devenpeck v. Alford*,
  543 U.S. 146 (2004) ................................................................................ 20

*Dist. of Columbia v. Wesby*,
  583 U.S. 48 (2018) .............................................................................. 21, 23

*Dougherty v. U.S. Dep't of Homeland Sec.*,
  No. 22-40665, 2023 U.S. App. LEXIS 24807 (5th Cir. Sept. 19, 2023).................... 9

*Dukore v. Dist. of Columbia*,
  799 F.3d 1137 (D.C. Cir. 2015)..................................................................... 21

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997)........................................................................ 4

*Egbert v. Boule*,
  596 U.S. 482 (2022) .......................................................................... passim

*Ellis v. Internal Revenue Servs.*,
  181 F. Supp. 3d 61 (D.D.C. 2012).................................................................. 28

*Farah v. Weyker*,
  926 F.3d 492 (8th Cir. 2019) .................................................................... 9, 15

*GasPlus, LLC v. DOI*,
  593 F. Supp. 2d 80 (D.D.C. 2009)................................................................. 26

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987)...................................................................... 28

*Hall v. United States*,
  773 F.2d 703 (6th Cir. 1985) ...................................................................... 26

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................ 18

*Harris v. D.C. Water & Sewer Auth.*,
  791 F.3d 65 (D.C. Cir. 2015).......................................................................... 4

*Hartman v. Moore*,
  547 U.S. 250 (2006) ................................................................................ 15

*Hatfill v. Gonzales*,
  519 F. Supp. 2d 13 (D.D.C. 2007)................................................................. 26

*Hernández v. Mesa*,
  140 S. Ct. 735 (2020) .............................................................................. 6, 9

*Hettinga v. United States*,
  677 F.3d 471 (D.C. Cir. 2012)..................................................................... 4, 8

*Higazy v. Templeton,*
  505 F.3d 161 (2d Cir. 2007) ................................................................................. 26
*Jarkesy v. S.E.C.,*
  803 F.3d 9 (D.C. Cir. 2015)................................................................................... 29
*K.O. v. Sessions,*
  41 F.4th 664 (D.C. Cir. 2022) ......................................................................... 7, 10
*\*Kelley v. FBI,*
  67 F. Supp. 3d (D.D.C. 2014)......................................................................... 11, 13
*Kreines v. United States,*
  33 F.3d 1105 (9th Cir. 1994) ................................................................................ 26
*Kyllo v. United States,*
  533 U.S. 27 (2001) ............................................................................................... 22
*Lewis v. Casey,*
  518 U.S. 343 (1996) ............................................................................................. 27
*Leyland v. Edwards,*
  797 F. Supp. 2d 7 (D.D.C. 2011).......................................................................... 26
*Liff v. Off. of Inspector Gen. for U. S. Dep't of Lab.,*
  881 F.3d 912 (D.C. Cir. 2018)................................................................................ 7
*Loumiet v. United States,*
  948 F.3d 376 (D.C. Cir. 2020)................................................................................ 7
*Lyons v. City of Xenia,*
  417 F.3d 565 (6th Cir. 2005) ................................................................................ 19
*Malley v. Briggs,*
  475 U.S. 335 (1986) ............................................................................................. 18
*Manafort v. DOJ,*
  311 F. Supp. 3d 22 (D.D.C. 2018)........................................................................ 29
*Massaquoi v. FBI,*
  No. 22-55448, 2023 U.S. App. LEXIS 22188 (9th Cir. Aug. 23, 2023) ................. 13
*Matthew A. Goldstein, PLLC v. United States Dep't of State,*
  851 F.3d 1 (D.C. Cir. 2017)..................................................................................... 5
*Ministerio Roca Solida v. McKelvey,*
  820 F.3d 1090 (9th Cir. 2016) .............................................................................. 26
*Mullenix v. Luna,*
  577 U.S. 7 (2015) ................................................................................................. 21
*Nat'l Ass'n of Home Builders v. E.P.A.,*
  667 F.3d 6 (D.C. Cir. 2011).................................................................................. 27
*Nieves v. Bertlett,*
  139 S. Ct. 1715 (2019) ......................................................................................... 20
*\*Page v. Comey,*
  628 F. Supp. 3d 103 (D.D.C. 2022)................................................................... 9, 10
*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................................ 18, 19
*Price v. Socialist People's Libyan Arab Jamahiriya,*
  294 F.3d 82 (D.C. Cir. 2002)................................................................................... 5

*Rizzo v. Goode*,
  423 U.S. 362 (1976) ................................................................................. 25
*Rowe v. PChange Protective Servs., LLC*,
  No. CV 22-3098 (JEB), 2023 WL 2598683 (D.D.C. Mar. 22, 2023) ....................... 28
*Saucier v. Katz*,
  533 U.S. 194 (2001) ............................................................................ 18, 20
*Schorr v. Roberson*,
  No. 15-1290, 2018 U.S. Dist. LEXIS 124138 (D.D.C. Feb. 1, 2018) ..................... 26
*Schuler v. United States*,
  617 F.2d 605 (D.C. Cir. 1979) .................................................................... 4
*Smith v. Maryland*,
  442 U.S. 735 (1979) ................................................................................. 22
*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................. 27
*Stewart v. Evans*,
  351 F.3d 1239 (D.C. Cir. 2003) .............................................................. 20, 22
*Stolt-Nielsen, S.A. v. United States*,
  442 F.3d 177 (3d Cir. 2006) ...................................................................... 29
*Town of Chester v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) ................................................................................. 27
*Trump v. Mazars USA, LLP*,
  140 S. Ct. 2019 (2020) ............................................................................. 17
*United States v. Armstrong*,
  517 U.S. 456 (1996) ............................................................................ 14, 15
*United States v. Bledsoe*,
  630 F. Supp. 3d 1 (D.D.C. 2022) .......................................................... 22, 23, 24
*United States v. Bowers*,
  No. 18-292, 2021 U.S. Dist. LEXIS 127036 (W.D. Pa. July 8, 2021) ..................... 23
*United States v. Bynum*,
  604 F.3d 161 (4th Cir. 2010) ..................................................................... 23
*United States v. Caira*,
  833 F.3d 803 (7th Cir. 2016) ..................................................................... 23
*United States v. Christie*,
  624 F.3d 558 (3d Cir. 2010) ...................................................................... 23
*United States v. Coleman*,
  No. 18-404, 2020 U.S. Dist. LEXIS 87570 (N.D. Ga. Jan. 14, 2020) ..................... 23
*United States v. Contreras*,
  905 F.3d 853 (5th Cir. 2018) ..................................................................... 23
*United States v. Cox*,
  342 F.2d 167 (5th Cir. 1965) ..................................................................... 29
*United States v. Cox*,
  465 F. Supp. 3d 854 (N.D. Ind. 2020) ........................................................... 24
*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ..................................................................... 23

*United States v. Hood,*
  920 F.3d 87 (1st Cir. 2019) ............................................................................... 23, 24
*United States v. Maclin,*
  393 F. Supp. 3d 701 (N.D. Ohio 2019) .................................................................. 23
*United States v. Miller,*
  425 U.S. 435 (1976) ............................................................................................... 22
*United States v. Nixon,*
  418 U.S. 683 (1974) ............................................................................................... 29
*United States v. Ortega,*
  679 F. App'x 766 (11th Cir. 2017) ......................................................................... 23
*United States v. Perrine,*
  518 F.3d 1196 (10th Cir. 2008) .............................................................................. 23
*United States v. Place,*
  462 U.S. 696 (1983) ............................................................................................... 19
*United States v. R. Enterprises, Inc.,*
  498 U.S. 292 (1991) ..................................................................................... 9, 20, 21
*United States v. Rosenow,*
  No. 17-3430, 2018 U.S. Dist. LEXIS 198054 (S.D. Cal. Nov. 20, 2018) ............... 23
*United States v. Scios,*
  590 F.2d 956 (D.C. Cir. 1978).............................................................................. 22
*United States v. Stone,*
  394 F. Supp. 3d 1 (D.D.C. 2019)......................................................................... 30
*United States v. Streett,*
  363 F. Supp. 3d 1212 (D.N.M. 2018)................................................................... 23
*United States v. Trader,*
  981 F.3d 961 (11th Cir. 2020) ............................................................................. 24
*United States v. Warshak,*
  631 F.3d 266 (6th Cir. 2010) ............................................................................... 11
*United States v. Wheelock,*
  772 F.3d 825 (8th Cir. 2014) ............................................................................... 23
*Unus v. Kane,*
  565 F.3d 103 (4th Cir. 2009) ............................................................................... 26
*Wallace v. BOP,*
  No. 22-25, 2023 U.S. Dist. LEXIS 196028 (E.D. Ky. Nov. 1, 2023) ...................... 13
*Warth v. Seldin,*
  422 U.S. 490 (1975) ................................................................................................. 5
*Wilson v. Libby,*
  535 F.3d 697.......................................................................................................... 14
*Wynn v. Starnes,*
  No. 21-1292, 2023 U.S. Dist. LEXIS 171787 (N.D. Ohio Sept. 26, 2023).............. 14
*Ziglar v. Abbasi,*
  582 U.S. 120 (2017) ...................................................................................... passim

Statutes, Rules, Regulations, and Other Authorities

18 U.S.C. § 2704(b)(1)(B) ............................................................................ 12

18 U.S.C. § 2703 ................................................................................... 11, 12

18 U.S.C. § 2705(b) ..................................................................................... 12

18 U.S.C. § 2707 .......................................................................................... 12

18 U.S.C. § 2712 .......................................................................................... 12

28 C.F.R. § 0.29c .......................................................................................... 13

28 C.F.R. § 0.29h .......................................................................................... 13

28 U.S.C. § 516 ............................................................................................. 15

28 U.S.C. § 547 ............................................................................................. 15

Chairman Jordan Subpoenas Attorney General Garland for Information on the
DOJ's Attempts to Spy on Congress, Judiciary Comm. (Dec. 19, 2023),
https://judiciary.house.gov/media/press-releases/chairman-jordan-subpoenas-
attorney-general-garland-information-dojs-attempts (last visited February 16,
2024) ............................................................................................................ 16

Fed. R. Crim. P. 17(c)(2) .............................................................................. 12

Inspector General Act of 1978, Pub. L. 95-452, 92 Stat. 1101 ................... 13

Ongoing Work, Off. of Inspector Gen., https://oig.justice.gov/ongoing-work (last
visited February 16 2024) ........................................................................... 14

**INTRODUCTION**

This case involves a single claim alleging that several former high-ranking government officials approved a grand jury subpoena to obtain a Congressional staffer's non-content electronic subscriber information in violation of the Fourth Amendment. That claim is brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, the subpoenaing of electronic records presents a new context for purposes of *Bivens*, and special factors counsel hesitation against implying a new Fourth Amendment damages action under these circumstances.

In addition, the defendants are entitled to qualified immunity because the complaint does not allege the violation of a clearly established Fourth Amendment right. The complaint alleges the grand jury subpoena was improper because it lacked probable cause. That is not the standard under the Fourth Amendment for issuance of a grand jury subpoena. Further, the unanimous case law holds there is no protectible Fourth Amendment interest in subscriber information stored by third-party service providers that does not include the content of communications.

The complaint's plea for non-damages relief also warrants dismissal. To start, equitable relief is not available in a *Bivens* action. The complaint also states no constitutional violation and, in any event, the plaintiff lacks standing to seek injunctive relief. Finally, the Court lacks jurisdiction to enjoin the defendants' participation in future judicial or investigatory proceedings.

For all these reasons, the motion to dismiss should be granted.

1

## STATEMENT

The following is drawn from the complaint, the allegations of which are taken as true for purposes of a dismissal motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff Kashyap Patel was a senior counsel for the United States House of Representatives Permanent Select Committee on Intelligence (HPSCI). Compl. ¶ 12. The defendants are former United States Attorney for the District of Columbia Jessie Liu, former Deputy Attorney General Rod Rosenstein, former Principal Associate Deputy Attorneys General Robert Hur and Edward O'Callaghan, and Federal Bureau of Investigation (FBI) Director Christopher Wray. *Id.* ¶¶ 13-17.[1]

According to the complaint, during the 2016 presidential election, the Department of Justice (DOJ) and FBI opened an investigation into allegations of collusion between President Donald J. Trump's then-presidential campaign and Russia. *Id.* ¶ 26. That investigation was called Crossfire Hurricane. *Id.* In early 2017, HPSCI began investigating the handling of Crossfire Hurricane. *Id.* ¶ 39. In April of 2017, Patel joined HPSCI. *Id.* ¶ 40. By the fall of 2017, according to the complaint, "the HPSCI team was preparing to seek the release of some of its findings." *Id.* ¶ 54. The complaint alleges a draft of these findings was shared with multiple people at DOJ and FBI at some unspecified date. *Id.* ¶ 55.

---

[1] The complaint alleges at the time of the alleged events, Defendant O'Callaghan was Principal Associate Deputy Attorney General when in fact he was the Principal Deputy Assistant Attorney General for the National Security Division. He did not become Principal Associate Deputy Attorney General until April of 2018, five months *after* the grand jury subpoena in this case issued.

The complaint alleges that on November 20, 2017, DOJ "obtained" a grand jury subpoena "upon approval from all Defendants." *Id.* ¶ 56. The subpoena sought the following data associated with various username identifiers:

- Names, including subscriber names, usernames, and screen names;

- Addresses, including email addresses, mailing addresses, residential addresses, and business addresses;

- Local and long-distance telephone connection records;

- Records of session times and durations;

- Length of service, including start date, and type of service utilized;

- Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers (MEIN), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers (MIN), Subscriber Identity Modules ("SIM"), MSISDN, International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Station Equipment Identities ("IMEI");

- Other subscriber numbers or identities, including temporarily assigned network addresses and registration internet protocol ("IP") addresses; and

- Means and source of payment for such service, including any credit card or bank account number, and billing records.

*Id.* ¶ 58(i)-(viii). Google allegedly provided a response on December 5, 2017. *Id.* ¶ 59. Patel claims he was unaware of the subpoena until Google notified him on December 12, 2022. *Id.* ¶ 61. He alleges DOJ had no legitimate basis for obtaining the subpoena and did so as part of a politically motivated attack. *Id.* ¶¶ 63-64.

Based on the foregoing, Patel brings a single Fourth Amendment claim for unlawful search and seizure under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.* ¶¶ 72-76. For relief, he seeks *Bivens* damages and injunctive relief. *See id.* ¶ 77.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if a plaintiff pleads facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When evaluating a 12(b)(6) motion, the court must accept a plaintiff's "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015), and must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). However, the court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam). Finally, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

For a motion to dismiss for lack of subject matter jurisdiction, including lack of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Matthew A. Goldstein, PLLC v. United States Dep't of State*, 851 F.3d 1, 4 (D.C. Cir. 2017) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). As with all facial challenges to jurisdiction, "the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002) (citation omitted); *see also Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1179 (D.C. Cir. 2015).

## ARGUMENT

I. **Count One should be dismissed because special factors preclude recognizing a *Bivens* claim related to the subpoenaing of electronic records held by a third-party service provider.**

In *Bivens*, the Supreme Court first recognized an implied cause of action for damages under the Fourth Amendment against federal narcotics officers "who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). It did so only after finding no "special factors counselling hesitation." *Bivens*, 403 U.S. at 396. In two subsequent cases, the Court allowed *Bivens*-type remedies for certain alleged violations of the Fifth and Eighth Amendments. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 582 U.S. at 131. All of the Court's decisions in this area

5

since have stressed that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 135 (citation omitted). Indeed, in the last 44 years, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Abbasi*, 582 U.S. at 135 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

In every *Bivens* case, "[t]he question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 582 U.S. at 135 (internal quotations and citation omitted). "The answer most often will be Congress." *Id.* That is because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Id.* at 136. "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* (internal quotations and citation omitted). "As a result, the Court has urged caution before extending *Bivens* remedies into any new context." *Id.* (internal quotations and citation omitted). Whenever special factors counsel *any hesitation*, "a *Bivens* remedy will not be available." *Id.*; *see also Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020) (observing that if there is any "reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request").

When a plaintiff seeks a *Bivens* remedy, a two-part inquiry is now required. "First, we ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningful[ly] different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (internal

quotations and citation omitted). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (internal quotations and citation omitted). However, the inquiry often resolves to a single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Id.* (citation omitted); *see also id.* ("If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.") (internal quotations and citation omitted).

The D.C. Circuit has had four occasions to address *Bivens* since the Supreme Court decided *Abbasi.* In all four cases, the D.C. Circuit found the given context new and that special factors counseled against implying a *Bivens* remedy. *See Buchanan v. Barr*, 71 F.4th 1003, 1006-10 (D.C. Cir. 2023) (refusing to imply *Bivens* remedy for alleged constitutional violations related to protesters at Lafayette Square); *K.O. v. Sessions*, 41 F.4th 664, 665 (D.C. Cir. 2022) (refusing to imply *Bivens* remedy for alleged constitutional violations related to immigrants separated from their families at the border); *Loumiet v. United States*, 948 F.3d 376, 380-85 (D.C. Cir. 2020) (refusing to imply *Bivens* remedy for alleged constitutional violations related to alleged retaliatory administrative enforcement actions); *Liff v. Off. of Inspector Gen. for U. S. Dep't of Lab.*, 881 F.3d 912, 917-23 (D.C. Cir. 2018) (refusing to imply

*Bivens* remedy for alleged constitutional violations related to government's dissemination of private information about plaintiff's business).

Against this backdrop, Patel seeks a new damages remedy under the Fourth Amendment for the alleged improper subpoenaing of electronic records. Such a claim obviously involves a new *Bivens* context. And because "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed," a *Bivens* remedy is unavailable. *See Egbert*, 96 U.S. at 492 (internal quotations and citation omitted).

### A.    Patel's claim presents a new *Bivens* context.

Patel's claim challenges a grand jury subpoena for electronic records. It necessarily presents a new *Bivens* context. "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Abbasi*, 582 U.S. at 139. The Supreme Court has provided a non-exhaustive list of factors that make for a meaningful difference from *Bivens*, *Davis,* or *Carlson*:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139-40.

Turning to this case, it does not matter that Patel, like the plaintiff in *Bivens* itself, alleges a Fourth Amendment violation. "A claim may arise in a new context

even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 140 S. Ct. at 743. What matters is the Supreme Court has never recognized a Fourth Amendment *Bivens* claim for the alleged improper subpoenaing of electronic records. That alone presents a new *Bivens* context. Several courts have held that a claim based on the unlawful surveillance and collection of electronic information "presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest" as in *Bivens*. *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019); *accord Dougherty v. U.S. Dep't of Homeland Sec.*, No. 22-40665, 2023 U.S. App. LEXIS 24807, at *13 (5th Cir. Sept. 19, 2023); *Cuney v. Choi*, No, 22-154, 2022 U.S. Dist. LEXIS 201968, at *11 (N.D.N.Y. Nov. 7, 2022); *Page v. Comey*, 628 F. Supp. 3d 103, 130 (D.D.C. 2022).

Several additional factors make this case meaningfully different from *Bivens*. This case involves the operation of a different legal mandate: Federal Rule of Criminal Procedure 17, which governs both trial and grand jury subpoenas. *See United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991). Relatedly, courts have also held that claims inviting inquiry into decisions made by federal investigators, prosecutors, and the grand jury during grand jury proceedings also present a new *Bivens* context. *See Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (such claims "involve[] intellectual leaps that a textbook forcible seizure never does"); *Farah v. Weyker,* 926 F.3d 492, 499 (8th Cir. 2019) ("Nothing so intrusive was required to prove the claims in *Bivens*.").

The "rank of the officers involved" is also quite different here. *See Abbasi*, 582 US. At 139. Unlike the claim in *Bivens*, which challenged actions by line-level narcotics agents acting without a warrant, the claim here challenges alleged actions by high-ranking officials at DOJ and FBI. That too makes for a new *Bivens* context. *See K.O.*, 41 F.4th at 665; *Attkisson*, 925 F.3d at 621; *Page*, 628 F. Supp. 3d at 130.

Relatedly, Patel's complaint alleges that the grand jury subpoena here was approved by these high-level Executive officials and sought information regarding a staff member working for a co-equal Branch of Government. *See* Compl. ¶¶ 64-67. That, the complaint maintains, raises "troubling" separation of powers concerns. *Id.* ¶¶ 4, 11, 74. And in this respect as well, Patel's claim arises in a strikingly different context than did the warrantless search and seizure claim in *Bivens*.

For all these reasons, this case presents a new *Bivens* context and a special-factors analysis is required.

### B. Special factors counsel hesitation against extending *Bivens* to claims challenging the subpoenaing of electronic records.

Once a case presents a new *Bivens* context, the question remains whether to extend *Bivens* liability. The inquiry is "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 483. "As with the 'new context' test, what constitutes a 'special factor' is interpreted broadly." *Buchanan*, 71 F.4th at 1008. "[T]he presence of one special factor is sufficient to preclude the availability of a *Bivens* remedy." *Id.* at 1010. Several special factors exist here.

First, through the Stored Wire Electronic Communications Act, 18 U.S.C. §§ 2701-2712, commonly known as the Stored Communications Act (SCA), Congress has regulated how the government obtains electronically stored data, and Congress created a damages remedy for the improper subpoenaing of non-content electronic records (the very conduct Patel alleges here). Specifically, the SCA governs the compelled disclosure of electronic communications and transactional records held by third-party service providers. It "delineates when a third-party, such as an email service, may disclose the contents of its customers' electronic communications, such as emails, or other record information about those communications, such as the name of the person who owns the email account." *Kelley v. FBI,* 67 F. Supp. 3d at 240, 254 (D.D.C. 2014). When the government seeks the content of electronic communications, it generally must obtain a warrant. *See* 18 U.S.C. § 2703(a)-(b); *see also United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010). But when the government seeks non-content subscriber information, such as name; address; local and long distance telephone connection records, or records of session times and durations; length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and means and source of payment for such service (including any credit card or bank account number); the government need only rely on an administrative or grand jury subpoena. 18 U.S.C. § 2703(c).

"A governmental entity receiving records or information under [2703(c)] is not required to provide notice to a subscriber or customer." 18 U.S.C. § 2703(c)(3).

<div align="center">11</div>

While the SCA does not prohibit a service provider from notifying a subscriber or customer that a governmental entity has received their records or information under Section 2703(c), Section 2705 provides that a government entity may seek a court order prohibiting a service provider from notifying the customer for a period of time if "there is reason to believe that notification of the existence of the subpoena may have an adverse result," such as endangering the life or physical safety of an individual; flight from prosecution; destruction of or tampering with evidence; intimidation of potential witnesses; or otherwise seriously jeopardizing an investigation or unduly delaying a trial. 18 U.S.C. § 2705(b).

Section 2704 provides that a customer who receives notice their electronic records have been obtained may move to vacate any court order that authorized the seizure or move to quash any subpoena if the customer "believ[es] that the records sought are not relevant to a legitimate law enforcement inquiry or that there has not been substantial compliance with the provisions of this chapter in some other respect." 18 U.S.C. 2704(b)(1)(B). Further, a service provider may move to quash or modify any order compelling disclosure "if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider." 18 U.S.C. § 2703(d).[2]

Finally, the SCA provides for civil remedies in the event its provisions are violated. *See* 18 U.S.C. §§ 2707, 2712. In sum, the SCA regulates obtaining email

---

[2] Additionally, Rule 17 of the Federal Rules of Criminal Procedure provides an additional vehicle for moving a court to "quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

data and provides remedies for persons who believe their electronic records were improperly targeted by a court order or grand jury subpoena. And so, several courts have held it would be improper to imply an additional constitutional damages action directly under the Fourth Amendment. *See Attkisson*, 925 F.3d at 621; *Dougherty*, 2023 U.S. App. LEXIS 24807, at *13-14; *Kelley*, 67 F. Supp. 3d at 269-71. That forecloses Patel's *Bivens* claim here: "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

In addition to the SCA, Congress has passed and frequently amended the Inspector General Act of 1978, Pub. L. 95-452, 92 Stat. 1101 (codified as amended, 5 U.S.C. §§ 401-24), establishing at least 72 Inspectors General across the government that can receive and investigate complaints of federal employee misconduct. Under DOJ regulations, an aggrieved party may report non-frivolous allegations of misconduct to the DOJ Office of the Inspector General, which may investigate the allegations or refer them for investigation by another department. *See* 28 C.F.R. §§ 0.29c(a),(d), 0.29h. After *Egbert*, a number of courts have held that the ability to lodge a complaint to an Inspector General is an alternative remedial process sufficient to foreclose a *Bivens* remedy. *See, e.g.*, *Massaquoi v. FBI*, No. 22-55448, 2023 U.S. App. LEXIS 22188, at *3-4 (9th Cir. Aug. 23, 2023); *Cain v. Rinehart*, No. 22-1893, 2023 U.S. App. LEXIS 18993, at *12 (6th Cir. July 25, 2023); *Wallace v. BOP*, No. 22-25, 2023 U.S. Dist. LEXIS 196028, at *15-16 (E.D. Ky. Nov.

13

1, 2023); *Daughtry v. Englade*, No. 22-240, 2023 U.S. Dist. LEXIS 202182, at *40-42 (E.D. Tex. Oct. 17, 2023); *Wynn v. Starnes*, No. 21-1292, 2023 U.S. Dist. LEXIS 171787, at *15-18 (N.D. Ohio Sept. 26, 2023).[3]

Two additional special factors counsel against extending *Bivens* here. The first is the risk of intrusion on prosecutorial and investigative discretion in connection with grand jury proceedings. *Cf. Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008 (identifying the risk that "litigation of the allegations in the amended complaint would inevitably require judicial intrusion into matters of national security and sensitive intelligence information" as a special factor). The second is the deference the courts have traditionally shown the Executive and Legislative Branches in resolving inter-branch related disputes among themselves.

First, the Attorney General and his subordinates "retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (cleaned up) (citation omitted). "They have this latitude because they are designated by statute as the President's delegates to help him discharge his

---

[3] DOJ's Office of Inspector General is currently reviewing the use of subpoenas and other authorities to obtain electronic communication of members of Congress and affiliated persons. *See* Ongoing Work, Off. of Inspector Gen., https://oig.justice.gov/ongoing-work (last visited February 16, 2024) (listing Reviewing the Department of Justice's Use of Subpoenas and Other Legal Authorities to Obtain Communications Records of Members of Congress and Affiliated Persons and the News Media). While Plaintiff is not entitled to participate in that review or obtain any damages from that review, the Supreme Court has specifically held that such limitations pose no hurdle to deferring to that process "even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Egbert*, 596 U.S. at 498 (internal quotations and citation omitted).

constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* (quoting U.S. Const., Art. II, § 3 and citing 28 U.S.C. §§ 516, 547). Consequently, the presumption of regularity supports their decisions, *id.*, and it "is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal." *Hartman v. Moore*, 547 U.S. 250, 263 (2006) (citation omitted). To hold otherwise "threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Armstrong*, 517 U.S. at 465 (citation omitted).

The risk of "judicial intrusion into executive discretion" when exercising prosecutorial authority, *Hartman*, 547 U.S. at 263, is a factor counseling against extending *Bivens* in this case. *Cf.* Compl. ¶ 9 (alleging that the "actions to search [Patel's] private email were a political and retaliatory act"). Claims that challenge prosecutorial decisions, such as whether to convene a grand jury or subpoena evidence, "risk . . . burdening and interfering with the executive branch's investigative . . . functions." *Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) (cleaned up) (citation omitted). Such claims may also risk "peeking behind the curtain of customarily secret grand-jury proceedings." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019).

These concerns take on special resonance when the proposed *Bivens* claim challenges decisions by high-level prosecutorial and law enforcement officials, such as the Deputy Attorney General and the other defendants here. As the Supreme

Court explained when disallowing *Bivens* claims against the Attorney General, the FBI Director, and other high-level officials in *Abbasi*, "[a]llowing a damages suit in this context, or in a like context in other circumstances, would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch." 582 U.S. at 141. And here, as in *Abbasi*, "[t]hese consequences counsel against allowing a *Bivens* action against the Executive Officials." *Id*. After all, "if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate . . . or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Egbert*, 596 U.S. at 496 (internal quotations and citation omitted) (emphasis in original).

Second, the complaint here seats the proposed *Bivens* claim in the midst of the Executive obtaining a grand jury subpoena seeking information regarding a staff member working for a co-equal Branch of Government. Compl. ¶¶ 11, 44, 66, 67. The Legislature is currently investigating the matter.[4] The potential for the *Bivens* claim to entangle the courts in an inter-branch dispute is an additional special factor that forecloses extending *Bivens* here.

The Supreme Court, in a case involving legislative subpoenas and executive privilege, has recognized that

> disputes of this sort can raise important issues concerning relations between the branches; that related disputes involving congressional efforts to seek official Executive Branch information recur on a regular

---

[4] *See also* Chairman Jordan Subpoenas Attorney General Garland for Information on the DOJ's Attempts to Spy on Congress, Judiciary Comm. (Dec. 19, 2023)*,* https://judiciary.house.gov/media/press-releases/chairman-jordan-subpoenas-attorney-general-garland-information-dojs-attempts (last visited Feb. 16, 2024).

> basis, including in the context of deeply partisan controversy; and that
> Congress and the Executive have nonetheless managed for over two
> centuries to resolve such disputes among themselves without the
> benefit of guidance from us.

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020). "Such longstanding

practice" of Congress and the Executive resolving inter-branch disputes on their

own "imposes on" the courts "a duty of care to ensure that" they "not needlessly

disturb the compromises and working arrangements that those branches

themselves have reached." *Id.* (cleaned up) (citation omitted). The same "duty of

care" counsels against extending *Bivens* in the context of this case. Whether a

*Bivens* remedy should be available at the behest of congressional staffers is a

question appropriately answered by the policy-making branches themselves and not

the courts. *Cf. Davis*, 442 U.S. at 253 (Powell, J., dissenting) ("Among those policies

that a court certainly should consider in deciding whether to imply a constitutional

right of action is that of comity toward an equal and coordinate branch of

government.").

Expanding *Bivens* is now a disfavored judicial activity. *Abbasi*, 582 U.S. at

131. If there any reason to think Congress might be better equipped to create a new

judicial remedy—"as it will be in most every case"—a court may not recognize a

*Bivens* remedy. *Egbert*, 596 U.S. at 492. That plainly is the case here. For these

reasons, the invitation to extend *Bivens* to a Fourth Amendment claim challenging

the alleged subpoenaing of electronic records regarding a Legislative staffer should

be declined and the *Bivens* claim dismissed.

## II.    The defendants are entitled to qualified immunity.

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). Qualified immunity represents an "accommodation of competing values." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). On the one hand, it allows for recovery if government officials violate well-established rights of which a reasonable person would have known. *See id*. at 818. On the other, it "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Resolving a claim to qualified immunity potentially involves answering two questions: First, whether the facts alleged show that the defendant violated a constitutional right at all; and second, whether the right was clearly established at the relevant time. *Pearson*, 555 U.S. at 232. While "often appropriate," and once required, resolution of both questions "should no longer be regarded as mandatory." *Id*. at 236 (overruling, in part, *Saucier v. Katz*, 533 U.S. 194 (2001)). Because only a clearly established violation forfeits immunity, a court may exercise its discretion to dispose of the case on that basis and avoid resolving a potentially unnecessary and perhaps difficult constitutional question. *See id*. at 236-37. Nonetheless, in some circumstances, resolution of the antecedent constitutional question may be helpful

or appropriate. For example, "[i]n some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." *Id.* at 236. Or "it often may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be." *Id.* (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 581 (6th Cir. 2005) (Sutton, J., concurring)) (cleaned up). Sometimes resolution of the constitutional question may have value because it contributes to the body of precedent and may clarify that certain conduct is indeed unlawful. *See id.* Resolution of the constitutional question presented is appropriate here because it is readily "apparent that in fact the relevant facts do not make out a constitutional violation at all." *Id.*

### A. The complaint fails to allege a constitutional violation because a grand jury subpoena does not require probable cause.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotations and citation omitted). Reasonableness is judged by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

The complaint here alleges that the grand jury subpoena for email account data was unreasonable under the Fourth Amendment because it was not supported

by probable cause. *See* Compl. ¶ 75 ("Specifically, the subpoena represented an unreasonable search and seizure of Mr. Patel's private personal information without probable cause."); *see also id.* ¶ 56 ("On November 20, 2017, DOJ, upon approval from all Defendants, who knew or should have known that no probable cause existed, obtained a grand jury subpoena to access Mr. Patel's personal information as part of a politically motivated investigation."). But the Supreme Court has held that "the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (citations omitted). By alleging the constitutional infirmity was issuance of a grand jury subpoena unsupported by probable cause, the complaint fails to allege a constitutional violation. "Having found no constitutional violation, 'there is no necessity for further inquiries concerning qualified immunity.'" *Stewart v. Evans*, 351 F.3d 1239, 1244 (D.C. Cir. 2003) (quoting *Saucier*, 533 U.S. at 201).[5]

**B.    The complaint fails to allege the violation of a clearly established constitutional right.**

The defendants are also entitled to qualified immunity because the Fourth Amendment right Patel asserts was in any event not clearly established. To determine if a right is clearly established, the D.C. Circuit looks to Supreme Court

---

[5] Notwithstanding the unfounded allegation the grand jury subpoena was "part of a politically motivated investigation," Compl. ¶ 56, the Supreme Court has "almost uniformly rejected invitations to probe subjective intent" in the Fourth Amendment context, which is governed by an *objective* inquiry. *See Nieves v. Bertlett*, 139 S. Ct. 1715, 1724 (2019); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

and D.C. Circuit cases, "as well as to cases from other courts exhibiting a consensus view—if there is one." *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (citation omitted). Importantly, the Supreme Court has admonished lower courts "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* While "a case directly on point" is not required, the Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances" was held to violate the law. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (internal quotations omitted). In the Fourth Amendment context, "[t]his requires a high 'degree of specificity.'" *Id.* at 63 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam). "[A] body of relevant case law is usually necessary," and "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 64 (internal quotations omitted). It is the plaintiff's burden "to show that the particular right in question— narrowly described to fit the factual pattern confronting the officers—was clearly established." *Dukore v. Dist. of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (citation omitted). This is a "demanding standard." *Wesby*, 583 U.S. at 63.

As already explained, Patel's theory that his Fourth Amendment rights were violated because the grand jury subpoena was not supported by probable cause is mistaken. *See R. Enters.*, 498 U.S. at 297. But the right he asserts was not clearly

21

established for an additional reason. It was not clearly established at the time the subpoena issued, nor is it clear now, that he has a protected privacy interest in the data the subpoena sought.

"[A] Fourth Amendment search does *not* occur . . . unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society [is] willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (internal quotations omitted) (emphasis in original); *Stewart*, 351 F.3d at 1243. However, in what has become known as the third-party doctrine, the Supreme Court has "consistently . . . held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *see also United States v. Miller*, 425 U.S. 435, 442-43 (1976) (holding government could obtain bank records through third-party subpoena); *United States v. Scios*, 590 F.2d 956, 991 (D.C. Cir. 1978) ("Individuals . . . ordinarily have no recognized privacy interest in information disclosed by them to or otherwise possessed by third parties."). The Supreme Court and D.C. Circuit have not yet decided whether, under the third-party doctrine, a subscriber has a protectible Fourth Amendment interest in non-content subscriber information retained by third-party service providers. Instead, this issue "raises a novel Fourth Amendment issue in this Circuit." *United States v. Bledsoe*, 630 F. Supp. 3d 1, 4 (D.D.C. 2022) (concluding that no such protectible Fourth Amendment interest exists).

Nor does any "robust consensus of cases of persuasive authority," *Wesby*, 583 U.S. at 63, clearly establish such a protected expectation of privacy. To the contrary, the law from other circuits establishes a robust consensus that a subscriber does *not* have a protectible Fourth Amendment interest in non-content subscriber information retained by third-party service providers. *See United States v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019); *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018); *United States v. Ortega*, 679 F. App'x 766 (11th Cir. 2017); *United States v. Caira*, 833 F.3d 803, 806-08 (7th Cir. 2016); *United States v. Wheelock*, 772 F.3d 825, 828-29 (8th Cir. 2014); *United States v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010); *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010); *United States v. Forrester*, 512 F.3d 500, 510-11 (9th Cir. 2008); *see also Bledsoe*, 630 F. Supp. 3d at 12-17; *United States v. Bowers*, No. 18-292, 2021 U.S. Dist. LEXIS 127036, at *7 (W.D. Pa. July 8, 2021); *United States v. Coleman*, No. 18-404, 2020 U.S. Dist. LEXIS 87570, at *53-55 (N.D. Ga. Jan. 14, 2020); *United States v. Maclin*, 393 F. Supp. 3d 701, 708 (N.D. Ohio 2019); *Brown v. Sprint Corp. Sec. Specialist*, No. 17-2561, 2019 U.S. Dist. LEXIS 16641, at *8-12 (E.D.N.Y. Jan. 31, 2019); *United States v. Streett*, 363 F. Supp. 3d 1212, 1308-10 (D.N.M. 2018); *United States v. Rosenow*, No. 17-3430, 2018 U.S. Dist. LEXIS 198054, at *28-35 (S.D. Cal. Nov. 20, 2018). In sum, "[e]very federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation." *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008).

The Supreme Court's decision in *Carpenter v. United States*, 585 U.S. 296 (2018), does not hold otherwise, and it does not clearly establish the right Patel asserts here. In *Carpenter*, the Court declined "to extend *Smith* and *Miller* to the collection of [historical cell-site location information (CSLI)]" retained by third-party service providers, and held that a protectible Fourth Amendment interest did apply to such information. 585 U.S. at 315. *Carpenter* is of no help to Patel for two reasons. First, *Carpenter* was decided after the issuance of the grand jury subpoena in this case and thus could not clearly establish the law at the time of the alleged events. Second, *Carpenter's* holding is a "narrow" one limited to CSLI and the significant privacy concerns associated with "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Id*. Accordingly, the lower federal courts have unanimously held that *Carpenter* in no way changed the law on the collection of other non-content subscriber information retained by third-party service providers. *See United States v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020) (observing that every circuit to consider the question pre- and post-*Carpenter* has held non-content subscriber information still falls within the third-party doctrine and thus, is not protected by the Fourth Amendment); *see also Hood*, 920 F.3d at 92 ("[T]he government's warrantless acquisition from Kik of the IP address data at issue here in no way gives rise to the unusual concern that the Supreme Court identified in *Carpenter*."); *Bledsoe*, 630 F. Supp. 3d at 14 (differentiating between CSLI and other usage-account information); *United States v. Cox*, 465 F. Supp. 3d 854, 855 (N.D. Ind. 2020) ("Defendant is not the first person

to make this argument. Instead, this same argument has been made by multiple defendants across the country. To date, no court has accepted the argument, and that streak will not end today.").

By no means then could the law in this area be deemed "clearly established" in favor of Patel's Fourth Amendment claim. Consequently, the defendants are also entitled to qualified immunity at the second step of the analysis.

## III.   Plaintiff is not entitled to injunctive relief or attorney's fees.

The other relief Patel seeks in his complaint is also unavailable as a matter of law. In the prayer for relief, the complaint seeks (1) compensatory damages; (2) reasonable attorneys' fees; (3) injunctive relief preventing those agents who investigated Patel from being involved in future proceedings against him, whether judicial or investigatory; (4) destruction of any and all records the FBI and DOJ obtained from the subpoena; and (5) any other relief the Court deems proper. Compl. ¶ 77(a)-(e). But equitable relief is not available in an individual-capacity *Bivens* suit and Patel does not assert any official-capacity claims. Patel has also failed to allege a Fourth Amendment violation. "Under the well-established rule that federal judicial powers may be exercised only on the basis of a constitutional violation, . . . this case present[s] no occasion for the District Court to grant equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 377 (1976) (citation and internal quotations omitted). Finally, Patel pleads no basis for Article III standing to seek prospective injunctive relief and additional separation-of-powers concerns bar courts from enjoining criminal investigations or prospective prosecutions.

For all these reasons, the requested non-damages relief is not available and dismissal is appropriate.

### A.    Equitable relief is not available on a *Bivens* claim.

As previously explained, in *Bivens*, the Court "recognized for the first time an implied private action *for damages* against federal officers alleged to have violated a citizen's constitutional rights." *Iqbal*, 556 U.S. at 675 (citing *Malesko*, 534 U.S. at 66) (emphasis added). Thus, a key component to any *Bivens* claim is the demand for damages. *See Abbasi*, 582 U.S. at 135 (stating that the central question in any case extending *Bivens* is "who should decide whether to provide for a *damages remedy*, Congress or the courts?") (emphasis added). Courts are unanimous in holding the *only* available remedy in a *Bivens* action is damages. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007); *see also Schorr v. Roberson*, No. 15-1290, 2018 U.S. Dist. LEXIS 124138, at *24 (D.D.C. Feb. 1, 2018). That means no equitable relief. *See Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) ("[W]e join our sister circuits in holding that relief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action."); *accord Leyland v. Edwards*, 797 F. Supp. 2d 7, 12 (D.D.C. 2011); *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 24 (D.D.C. 2007). Attorney's fees are also not available in *Bivens* actions. *See Unus v. Kane*, 565 F.3d 103, 113, 126 (4th Cir. 2009); *Kreines v. United States*, 33 F.3d 1105, 1109 (9th Cir. 1994); *Hall v. United States*, 773 F.2d 703, 707 (6th Cir. 1985); *Couden v. Duffey*, 826 F. Supp. 2d 711, 717 & n.23 (D. Del. 2011); *GasPlus, LLC v. DOI*, 593 F. Supp. 2d 80, 88-89 (D.D.C. 2009). Thus, the plea for non-damages relief also warrants dismissal.

26

## B. Plaintiff lacks Article III standing to seek injunctive relief.

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And because "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), a plaintiff "must demonstrate standing for each claim he seeks to press and for *each form of relief* that is sought," *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (emphasis added).

Patel fails to allege facts that show any such imminent injury in fact that would be redressed by the prospective injunctive relief sought. Instead, he alleges only harm flowing from a claimed past violation of his constitutional rights. *See, e.g.*, Compl. ¶ 76 ("As a direct and proximate result of DOJ's actions, Mr. Patel suffered harm as a result of the invasion of his constitutionally protected privacy."). But "[w]hen plaintiffs seek injunctive relief, . . . 'past injuries alone are insufficient to establish standing.'" *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 34 (D.D.C. 2021), *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (quoting *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011)). That is because, while a plaintiff's past experience may "afford[] [him] standing to claim damages," it "does nothing to establish a real and immediate threat that he would again be" subjected to the challenged government conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Nor would prospective injunctive relief redress the harm that Patel claims to have suffered as a result of past government conduct. *Nat'l Ass'n of*

*Home Builders v. E.P.A.*, 667 F.3d 6, 14 (D.C. Cir. 2011) ("declaratory and injunctive relief" does not "remedy the past injuries the members may have already incurred").

To seek injunctive relief on the basis of past injuries, a plaintiff must: (1) "demonstrate [the] existence" of a challenged policy or practice; and (2) establish that he is "likely to be subjected to the policy again." *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987). Here, Patel fails to allege any "particular challenged policy, practice, or custom," much less establish he is likely to be subjected to that policy again—Patel no longer works for HPSCI, *see* Compl. ¶ 12—and "accordingly has no standing to seek injunctive relief." *Rowe v. PChange Protective Servs., LLC*, No. CV 22-3098 (JEB), 2023 WL 2598683, at *4 (D.D.C. Mar. 22, 2023); *see also Ellis v. Internal Revenue Servs.*, 181 F. Supp. 3d 61, 63 (D.D.C. 2012) (dismissing for lack of jurisdiction where "[t]here is no allegation of fact that would lead to a reasonable inference that the government is likely to engage in [challenged conduct] against plaintiff in the future").

### C. The Court lacks jurisdiction to enjoin the defendants' participation in future judicial or investigatory proceedings or to order the destruction of records.

The Court also lacks jurisdiction to issue the specific relief Patel seeks here— an injunction to prevent "those agents who improperly investigated [him] from being involved in future proceedings against him, whether judicial or investigatory," Compl. ¶ 77(c). If a person subject to an investigation is indicted, federal criminal procedure provides adequate opportunities to test the lawfulness of the government's exercise of prosecutorial and investigatory authority. *See Deaver v. Seymour*, 822 F.2d 66, 69-70 (D.C. Cir. 1987) ("Because these defendants are

already guaranteed access to a federal court, it is not surprising that subjects of federal investigation have never gained injunctive relief against federal prosecutors."). Seeking to restrain investigatory and prosecutorial authority through a preemptive civil injunctive action is improper. *Id.* at 71 ("Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure."); *see also Jarkesy v. S.E.C.*, 803 F.3d 9, 26 (D.C. Cir. 2015) (noting "basic doctrine of equity jurisprudence" that courts of equity "should not act to retrain a criminal prosecution[] when the moving party has an adequate remedy at law and will not suffer irreparable injury"). That is because "the executive branch 'has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006), *as amended* (May 16, 2006) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Accordingly, in light of "[s]eparation-of-powers concerns," courts may not enjoin future investigations or prosecutions. *Id.* at 187; *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.").

Patel's claim for equitable relief to enjoin future exercises of prosecutorial discretion should therefore be dismissed. *Manafort v. DOJ*, 311 F. Supp. 3d 22, 32 (D.D.C. 2018) (dismissing action that "attempt[s] to restrain the future activities of the prosecutor" under *Deaver*, 822 F.2d at 69); *Stolt-Nielsen*, 442 F.3d at 187

(directing district court to dismiss complaints seeking to enjoin government's criminal indictments); *Christoforu v. United States*, 842 F. Supp. 1453, 1456 (S.D. Fla. 1994), *aff'd*, 61 F.3d 31 (11th Cir. 1995) (same); *cf. United States v. Stone*, 394 F. Supp. 3d 1, 16-17 (D.D.C. 2019) (denying motion to enjoin future prosecution in light of "well-established limits on the invocation of equitable remedies").

These same principles also warrant dismissal of Patel's other claim for equitable relief—"[d]estruction of any and all records that the FBI and DOJ obtained from their subpoena to Mr. Patel," Compl. ¶ 77(d). To the extent Patel has standing to request the destruction of third-party records he never possessed, equitable relief pertaining to records obtained through a grand jury subpoena cannot be litigated in ancillary civil proceedings, *see Deaver*, 822 F.2d at 71, let alone against federal employees in their individual capacities. *See supra.* at 26.

## CONCLUSION

For the forgoing reasons, the defendants' motion to dismiss should be granted, and this action dismissed.

Respectfully submitted this 16th day of February 2024.

<div style="margin-left: 40%;">

BRIAN M. BOYNTON

Principal Deputy Assistant Attorney
General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

</div>

s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
siegmund.f.fuchs@usdoj.gov

Attorneys for the Defendants