**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| KASHYAP P. PATEL, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 1:23-cv-2699 |
| v. | : | |
| | : | The Honorable Amit P. Mehta |
| JESSIE LIU, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

_____

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Dated:      March 29, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
(202) 616-4314 (fax)
siegmund.f.fuchs@usdoj.gov

Attorneys for the Defendants

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................ 1

**ARGUMENT** .................................................................... 1

   **I.** *Bivens* **is not properly extended to the new context of subpoenas for electronic records.** ....................................................... 1

      A.  This case presents a new *Bivens* context ................................. 2

      B.  Special factors foreclose recognizing a *Bivens* claim for the alleged improper issuance of a subpoena for electronic records. ............... 5

**II. Defendants are entitled to qualified immunity.** ......................... 11

      A.  Patel relies on the wrong constitutional standard .................... 11

      B.  It is not clearly established that the Fourth Amendment protects non-content electronic subscriber information retained by third parties. ...... 14

**III.**   **Patel is not entitled to injunctive relief or attorney's fees.** ................. 15

**CONCLUSION** ................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................ 12

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
  403 U.S. 388 (1971) ..................................................................... passim

*Brosseau v. Haugen,*
  543 U.S. 194 (2004) ........................................................................... 14

*Buchanan v. Barr,*
  71 F.4th 1003 (D.C. Cir. 2023) ........................................................... 5

*Bush v. Lucas,*
  462 U.S. 367 (1983) ............................................................................. 6

*Cain v. Rinehart,*
  No. 22-1893, 2023 U.S. App. LEXIS 18993 (6th Cir. July 25, 2023) ...... 5

*Carlson v. Green,*
  446 U.S. 14 (1980) .......................................................................... 3, 8

*Carpenter v. United States,*
  585 U.S. 296 (2018) .................................................................... 14, 15

*Chang v. United States,*
  738 F. Supp. 2d 83 (D.D.C. 2010) .................................................... 16

*Chappell v. Wallace,*
  462 U. S. 296 (1983) ........................................................................... 3

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................................................ 16

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ........................................................................... 16

*Comm. on Judiciary of United States House of Representatives v. McGahn,*
  968 F.3d 755 (D.C. Cir. 2020) ...................................................... 6, 10

*Correctional Services Corp. v. Malesko,*
  534 U. S. 61 (2001) ............................................................................. 3

*Davis v. Passman,*
  442 U.S. 228 (1979) ............................................................................. 2

*Egbert v. Boule,*
  596 U.S. 482 (2022) ....................................................................passim

*Hale v. Henkel,*
  201 U.S. 43 (1906) ............................................................................ 12

*Hernández v. Mesa,*
  539 U.S. 93 (2020) ..................................................................... 2, 3, 7

iii

*Hettinga v. United States,*
  677 F.3d 471 (D.C. Cir. 2012)................................................................. 12
*Jacobs v. Alam,*
  915 F.3d 1028 (6th Cir. 2019) ................................................................. 4
*K.O. v. Sessions,*
  No. 20-5255, 2022 U.S. App. LEXIS 20984 (D.C. Cir. July 29, 2022) ..................... 4
*Kentucky v. King,*
  563 U.S. 452 (2011) ........................................................................ 13
*Loumiet v. United States,*
  948 F.3d 376 (D.C. Cir. 2020)................................................................ 5
*Minneci v. Pollard,*
  565 U.S. 118 (2012) ......................................................................... 6
*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ........................................................................ 14
*Nieves v. Bartlett,*
  139 S. Ct. 1715 (2019) ..................................................................... 13
*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................ 14
*Pennsylvania Bd. of Prob. and Parole v. Scott,*
  524 U.S. 357 (1998) ........................................................................ 17
*Rizzo v. Goode,*
  423 U.S. 362 (1976) ........................................................................ 17
*Schweicker v. Chilicky,*
  487 U.S. 412 (1988) ..................................................................... 9, 11
*Smith v. Maryland,*
  442 U.S. 735 (1979) ........................................................................ 15
*Stolt-Nielsen, S.A. v. United States,*
  442 F.3d 177 (3d Cir. 2006)................................................................. 16
*United States v. Bledsoe,*
  630 F. Supp. 3d 1 (D.D.C. 2022)............................................................. 15
*United States v. Calandra,*
  414 U.S. 338 (1974) ..................................................................... 11, 12
*United States v. Cox,*
  465 F. Supp. 3d 854 (N.D. Ind. 2020) ....................................................... 15
*United States v. Dionisio,*
  410 U.S. 1 (1973) ....................................................................... 11, 13
*United States v. Hood,*
  920 F.3d 87 (1st Cir. 2019) ................................................................ 15
*United States v. Miller,*
  425 U.S. 435 (1976) ........................................................................ 15
*United States v. Nixon,*
  418 U.S. 683 (1974) ........................................................................ 16
*United States v. Stanley,*
  483 U.S. 669 (1987) ......................................................................... 9

*United States v. Trader,*
  981 F.3d 961 (11th Cir. 2020) ................................................... 15
*Whren v. United States,*
  517 U.S. 806 (1996) ................................................................. 13
*Wilkie v. Robbins,*
  551 U.S. 537 (2007) ................................................................... 6
*Wilson v. Layne,*
  526 U.S. 603 (1999) ................................................................. 14
*Wilson v. Libby,*
  535 F.3d 697 (D.C. Cir. 2008) ................................................ 6, 9
*Ziglar v. Abbasi,*
  582 U.S. 120 (2017) ........................................................... passim

## Statutes & Rules

18 U.S.C. § 2707 ............................................................................. 9
28 U.S.C. § 516 ............................................................................. 16
28 U.S.C. § 2072 ........................................................................ 7, 11
Fed. R. Civ. P. 45(d) ....................................................................... 7
Fed. R. Crim. P. 17(c) ..................................................................... 7
Fed. R. Crim. P. 17(g) ................................................................... 11

## INTRODUCTION

Plaintiff Kashyap Patel alleges that several current and former high-level government officials unlawfully obtained a grand jury subpoena to collect non-content electronic subscriber information about him that was retained by a third party. This, he contends, violated his Fourth Amendment rights. He seeks relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Patel's allegations raise a new *Bivens* context under *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and special factors counseling hesitation foreclose extending the *Bivens* remedy in these circumstances. The defendants are also entitled to qualified immunity. Patel's theory of Fourth Amendment violation is incorrect, and no clearly established law protects non-content electronic subscriber information retained by third parties from subpoena. Finally, the non-damages relief Patel seeks is improper in a *Bivens* action, and the request for equitable relief otherwise lacks merit. The defendants' motion to dismiss should be granted.

## ARGUMENT

### I.    *Bivens* is not properly extended to the new context of subpoenas for electronic records.

As shown in our opening memorandum, Patel's Fourth Amendment claim presents a new *Bivens* context under *Abbasi* and special factors counseling hesitation foreclose extending the court-created *Bivens* remedy to this new context. Patel's contrary arguments are mistaken. They ignore the factors the Supreme Court has identified as bearing on the new-context inquiry and rely instead on the kind of "superficial similarities" to *Bivens* that the Supreme Court rejected in

1

*Egbert v. Boule*, 596 U.S. 482, 495 (2022). Patel's arguments that no special factors counsel hesitation are similarly mistaken. Patel's argument that the courts are better positioned than Congress to create a damages cause of action is contrary to recent Supreme Court precedent. "At bottom, creating a cause of action is a legislative endeavor," and Congress is better positioned than the courts to weigh the "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide" involved in minting new causes of action. *Id.* at 491 (quoting *Abbasi*, 582 U.S. at 134, 136) (internal quotations omitted).

## A.      This case presents a new *Bivens* context.

Patel argues that because the right at issue is the same as in *Bivens*, and the mechanism of injury, "unreasonable search and seizure," is also the same, this is "[t]he classic *Bivens* case" and hence, the context is not new. Opposition (Opp.), at 8. The Supreme Court has consistently rejected that approach to the *Bivens* "new-context" inquiry. For example, in *Hernández v. Mesa*, 589 U.S. 93 (2020), the Supreme Court rejected a similar new-context argument in response to Fourth and Fifth Amendment *Bivens* claims:

> Petitioners contend that their Fourth and Fifth Amendment claims do not involve a new context because *Bivens* and *Davis* [*v. Passman*, 442 U.S. 228 (1979),] involved claims under those same two amendments, but that argument rests on a basic misunderstanding of what our cases mean by a new context. A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.

*Id.* at 100. Although the *Hernández* plaintiffs' claims included allegations of "unreasonable force" like in *Bivens* itself, *see* 403 U.S. at 389, "[t]here [wa]s a world of difference between those claims and petitioners' cross-border shooting claims,

where 'the risk of disruptive intrusion by the Judiciary into the functioning of other branches' is significant." *Hernández*, 589 U.S. at 103 (citation omitted).

Again in *Egbert*, the Supreme Court determined that Fourth Amendment unreasonable force claims arose in a new context, different from *Bivens*. The Court acknowledged that "[w]hile *Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury, these superficial similarities are not enough to support the judicial creation of a cause of action." 596 U.S. at 495 (internal quotations and citation omitted).

Similarly, in *Abbasi*, 582 U.S. at 138, the Supreme Court rejected arguments that no new *Bivens* context was presented because "the right at issue" and "the mechanism of injury" were the same as in *Davis* and in *Carlson v. Green*, 446 U.S. 14 (1980). Pointing to its intervening decisions in *Chappell v. Wallace*, 462 U.S. 296 (1983), and *Correctional Services Corp. v. Malesko*, 534 U. S. 61 (2001), that rejected *Bivens* claims asserting the same rights, the Court explained that "if the approach followed by the Court of Appeals is the correct one, this Court should have held that the cases arose in the same context, obviating any need for a special-factors inquiry." *Abbasi*, 582 U.S. at 139.

These precedents foreclose Patel's argument that his case presents no new context because it "involves '[t]he classic *Bivens* case' in that it obviously involves an unreasonable search in violation of the Fourth Amendment." Opp., at 8. As explained in our opening memorandum, Patel's case presents a new *Bivens* context

for a number of reasons. Neither *Bivens*, *Davis*, nor *Carlson* involved a subpoena for electronic records. None involved high-level Department of Justice officials and the FBI Director, as is the case here. *See K.O. v. Sessions*, No. 20-5255, 2022 U.S. App. LEXIS 20984, at *11 (D.C. Cir. July 29, 2022) ("There is a meaningful difference between the Executive Branch officials and the federal narcotics agents in *Bivens*."). None involved the separation of powers concerns potentially implicated by Executive Branch and Congressional relations that Patel's allegations suggest. *See* Memorandum in Support of Motion to Dismiss (Mem.), at 8-10. Patel does not argue otherwise.

Patel's remaining "new context" arguments are unpersuasive. Relying on *Abbasi's* observation that "this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose," 582 U.S. at 134, and the Sixth Circuit's decision in *Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019), he reasons "that a subpoena is a 'run-of-the-mill' standard law enforcement operation," and "[a]ccordingly, this is not a new context[.]" Opp., at 9. That is incorrect. Issuance of a subpoena is quite different from the warrantless search and seizure of an apartment by line-level narcotics agents in *Bivens* or the special deputy U.S. Marshals' warrantless search of a home in *Jacobs*. *See* 915 F.3d at 1038. Whatever *Bivens'* continued scope in the "search and seizure context in which it arose," *Abbasi*, 582 U.S. at 134, neither *Bivens* itself, nor *Jacobs*, involved a grand jury subpoena to third parties, electronic records, high-

level officials, or the collection of information regarding a Legislative Branch staff member.[1]

"What constitutes a 'new context' is exceedingly broad." *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). Patel presents no persuasive arguments for why his claim falls into an established *Bivens* context. "[T]he new-context inquiry is easily satisfied," and a special-factors analysis is required. *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020).

### B. Special factors foreclose recognizing a *Bivens* claim for the alleged improper issuance of a subpoena for electronic records.

As shown in our opening memorandum, the presence of special factors counseling hesitation foreclose extending *Bivens* to the new context this case presents. *See* Mem., at 10-18. Patel's contrary arguments are unpersuasive.

Patel argues first that "[i]n recent Supreme Court cases, on which Defendants heavily rely, the Supreme Court has found special factors counseling against *Bivens* applying because they involved a national security context," and that "this case does not involve a national security dispute." Opp., at 9, 10. That argument is mistaken for two reasons. First, the animating concern of "special factors" jurisprudence is not limited to avoiding judicial interference in national security matters. Instead, in every case "separation-of-powers principles are or

---

[1] The Sixth Circuit's decision in *Jacobs* has limited persuasive force here for an additional reason. Subsequent to the Supreme Court's decision in *Egbert*, the Sixth Circuit has held that claims against deputy U.S. marshals do raise a new *Bivens* context because the U.S. Marshals Service is a different federal agency than the Federal Bureau of Narcotics and that this is a "meaningful distinction" in light of *Egbert. See Cain v. Rinehart*, No. 22-1893, 2023 U.S. App. LEXIS 18993, at *10-11 (6th Cir. July 25, 2023).

should be central to the [special factors] analysis. The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 582 U.S. at 135 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). That "who should decide" question arises in every new *Bivens* context regardless of whether national security considerations might be implicated. *See, e.g., Bush*, 462 U.S. at 390 (federal employee's retaliatory discharge claim); *Wilkie v. Robbins*, 551 U.S. 537, 547-48 (2007) (landowner's retaliation claim against Bureau of Land Management officials); *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (Eighth Amendment claim against guards in a privately-operated prison). Second, Patel overlooks that his complaint at least potentially implicates inter-branch relations relating to national security matters. *See, e.g.*, Compl. ¶¶ 39, 40, 54. "[T]he difficulties associated with subjecting allegations" like these "to judicial and public scrutiny" are themselves reasons for judicial hesitation and not extending *Bivens* in this new context. *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008).

Patel next argues that no special factors counsel hesitation because he sues over an allegedly unconstitutional subpoena and "subpoena enforcement is a familiar judicial exercise." Opp., at 10 (quoting *Comm. on Judiciary of United States House of Representatives v. McGahn*, 968 F.3d 755, 772 (D.C. Cir. 2020)) (citation and internal quotations omitted). But Patel's *Bivens* claim does not involve "subpoena enforcement." He seeks damages from high-level Department of Justice officials and the FBI Director for allegedly causing a subpoena to issue. That is plainly different. Subpoena enforcement involves judicial proceedings under

6

legislatively prescribed rules and standards. *See* Fed. R. Crim. P. 17(c); Fed. R. Civ. P. 45(d); *see also* 28 U.S.C. § 2072(a). Whether to create a cause of action for damages to supplement the prescribed remedies under the Federal Rules of Criminal Procedure involves the kinds of remedial policy judgments that *Abbasi*, *Egbert*, and other cases teach Congress is presumptively better positioned to make. In this case, as in "most every case," Congress is better positioned to decide that question, and hence "no *Bivens* action may lie." *Egbert*, 596 U.S. at 492.

Acknowledging that "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts," Opp., at 10 (quoting *Hernández*, 539 U.S. at 114) (citation and internal quotations omitted), Patel argues that "if Congress were to pass a remedy against subpoenas to its employees, it would undoubtedly be met with public backlash and be seen as an abuse of power. It would create the optics that Congress is making itself untouchable." *Id.* "Accordingly," he says, "the onus is on the courts to provide a remedy for this sort of unconstitutional conduct." *Id.* That argument is mistaken for several reasons. First, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Abbasi*, 582 U.S. at 137. Second, Patel's argument is speculative. It depends entirely on the assumption that Congress would limit a legislative damages remedy in a self-interested way instead of, for

7

example, extending a remedy to the citizenry generally. In any event, the legislative difficulties Patel supposes underscore that crafting a cause of action involves policy determinations and line drawing that Congress is better suited to perform. *Id.* at 136 ("It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others.").

Patel argues that "*Bivens* is concerned solely with deterring the unconstitutional acts of individual officers," and that "[t]he government has no safeguards in place to protect against an unconstitutional search of a political rival, in the legislative branch." Opp., at 11 (citations and internal quotations omitted). He also reasons that each of the cases in which the Supreme Court declined to extend *Bivens* is distinguishable because "Congress [wa]s either better suited to handle or ha[d] already established an alternative remedy." *Id.*

Patel's deterrence argument proves too much. "It is almost axiomatic that the threat of damages has a deterrent effect." *Carlson*, 446 U.S. at 21 (citation omitted). If, as Patel implies, deterrence was the overriding consideration, then virtually all of the Supreme Court's post-*Carlson Bivens* decisions would have continued to expand *Bivens* to new contexts. As already explained, the reason *Bivens* has not continued to so expand is that separation of powers concerns, not a judicially crafted deterrence policy, are now the guiding consideration. *See Abbasi*, 582 U.S. at 135.

Patel's argument that "[t]he government has no safeguards in place to protect against an unconstitutional search of a political rival, in the legislative branch,"

8

Opp., at 11, is also mistaken. Congress has already established through the Stored Communications Act (SCA) an alternative remedy for the alleged unlawful issuance of a subpoena for electronic records. Patel responds that one of those remedies—moving to quash the subpoena—is inadequate here because he did not learn about the subpoena until well after its issuance. *Id.* at 12. But limits on existing remedies, standing alone, have never been a sufficient reason for expanding *Bivens*. *See Schweicker v. Chilicky*, 487 U.S. 412, 427-29 (1988); *Wilson*, 535 F.3d at 705-08. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. "That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* (citation omitted); *see also United States v. Stanley*, 483 U.S. 669, 683 (1987) ("It is irrelevant to a special factors analysis whether the laws currently on the books afford [plaintiff] . . . an adequate federal remedy for his injuries."). Patel also ignores that the SCA provides for civil remedies in addition to the quashing of subpoenas. *See* 18 U.S.C. § 2707, 2712; *see also* Mem., at 12.

Patel acknowledges that "while non-binding jurisdictions have found the Inspector General Act to be an appropriate remedy, this goes against the purpose of *Bivens*, which is to provide monetary relief for constitutional violations." Opp., at 12 (citing *Bivens*, 403 U.S. at 397). Like Patel's "deterrence" conception of *Bivens*, a "monetary relief" purpose cannot justify its expansion to new contexts. Indeed, like

the Inspectors General Act, the administrative grievance process in *Egbert* did not provide for complainant participation, judicial review, or monetary relief. The Supreme Court nonetheless found the program's existence to be a special factor that "independently" foreclosed a *Bivens* action. *Egbert*, 596 U.S. at 497-98.

Though acknowledging "it is important for the executive branch to have some autonomy when committing its investigatory functions," Patel complains that without a *Bivens* remedy, the Executive Branch has "a blank check to investigate those it deems a political opponent for political purposes." Opp., at 12. That overlooks that when it comes to extending *Bivens* "[t]he question is 'who should decide'" what the checks on potential abuse shall be. *Abbasi*, 582 U.S. at 135. Patel's argument also overlooks the checks on abuse that the SCA, the Inspector General Act, and Rule 17 of the Federal Rules of Civil Procedure impose on subpoena abuse. Those existing safeguards are dispositive. *See Egbert*, 596 U.S. at 498. Patel points to nothing suggesting that Congress or the Executive thinks these alternatives to a *Bivens* action are insufficient to deter subpoena abuse.

Finally, Patel observes that the D.C. Circuit recently determined that the courts may weigh in on intra-Branch subpoena disputes. Opp., at 13 (citing *McGahn*, 968 F.3d at 772-73). As already explained, the D.C. Circuit's *McGahn* decision concerned judicial enforcement of congressional subpoenas, not judicial creation of a new constitutional damages action. Subpoena enforcement proceeds under established statutory rules adopted or authorized by Congress. *See McGahn*, 968 F.3d at 765 (citing House Rules X & XI, cl. 2(m)(1)); *id*. at 772 (citing Fed. R.

Civ. P. 45); *see also* Fed. R. Crim. P. 17(g), and 28 U.S.C. § 2072. That is not true for what Patel seeks here: a new damages action over how subpoenas are used.

Because Patel's *Bivens* action arises in a new context and special factors counsel hesitation, the damages relief he seeks "is unavailable as a matter of law, [and] the case must be dismissed." *Chilicky*, 487 U.S. at 429.

## II.    Defendants are entitled to qualified immunity.

As shown in our opening memorandum, the defendants are entitled to qualified immunity for two reasons. First, the complaint does not allege a Fourth Amendment violation. Second, it is not clearly established that Patel had a Fourth Amendment protected privacy interest in non-content electronic subscriber information retained by third parties. Patel's contrary arguments apply the wrong standard and are in any event mistaken.

### A.    Patel relies on the wrong constitutional standard.

In contrast to the complaint, Patel now concedes that probable cause is not the standard for evaluating the propriety of a grand jury subpoena under the Fourth Amendment. *See* Opp., at 14. Changing tack, he stitches together the proposition that "[a] grand jury's subpoena duces tecum will be disallowed if it is far too sweeping in its terms to be regarded as reasonable under the Fourth Amendment," Opp., at 14 (quoting *United States v. Calandra*, 414 U.S. 338, 346 (1974) (citations and internal quotations omitted), with the proposition that the "Constitution could not tolerate the transformation of the grand jury into an instrument of oppression." *Id.* at 14-15 (quoting *United States v. Dionisio*, 410 U.S. 1, 12 (1973)). The Fourth Amendment was violated, Patel then reasons, because the

11

defendants "were driven by impure and retaliatory motives in an attempt to hide their illegal conduct." *Id*. at 16. That theory does not state a Fourth Amendment violation for several reasons.

First, though he bases his theory in part on the Fourth Amendment's protection against subpoenas "far too sweeping" in their terms to be "regarded as reasonable under the Fourth Amendment," *Calandra*, 414 U.S. at 346, Patel does not explain how the subpoena here runs afoul of that test. His assertion that "Defendants had no legitimate use for things like Mr. Patel's telephone records, subscriber services and names, MAC and IP addresses, Electronic Serial Numbers, and other sensitive information," Opp., at 16, is conclusory and not entitled to the assumption of truth at the dismissal stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). Nor does the complaint suggest that the subpoena, which was issued to a third party, not Patel himself, imposed some burden on Patel that would amount to "oppression" in the relevant sense. *Cf. Hale v. Henkel*, 201 U.S. 43, 77 (1906) (subpoena was deemed "far too sweeping in its terms" to be reasonable where it was "difficult to say how" recipient's "business could be carried on after it had been denuded of this mass of material, which is not shown to be necessary in the prosecution of this case").

Second, Patel's theory that the subpoena violated the Fourth Amendment because it was motivated by "impure and retaliatory motives in an attempt to hide" supposedly "illegal conduct" is also mistaken. Opp., at 16. "Legal tests based on reasonableness are generally objective," and the Supreme Court "has long taken the

view that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Kentucky v. King*, 563 U.S. 452, 464 (2011). Accordingly, "[i]n the Fourth Amendment context," the Supreme Court has "almost uniformly rejected invitations to probe subjective intent." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Whren v. United States*, 517 U.S. 806, 812-14 (1996). Patel does not argue otherwise; his "impure and retaliatory motive" theory simply elides the Fourth Amendment's objective standard. Because Patel's theory is incompatible with that standard, he has not stated a Fourth Amendment claim.

Patel's reliance on *Dionisio* is also misplaced. Patel characterizes *Dionisio* as "in the context of the First Amendment, where the Supreme Court observed that a grand jury could not be used for the purposes of harming a reporter's relationships with sources so his reporting would no longer be seen as valid." Opp., at 15 (citation omitted). That is incorrect. *Dionisio* was a Fourth Amendment case involving the government's use of a grand jury subpoena to compel individuals to provide voice exemplars. *See* 410 U.S. at 2-3. The Court held that the subpoenas did not violate the Fourth Amendment. *Id.* at 10.

Because Patel's alternate theory advanced in his opposition does not state a Fourth Amendment violation, the defendants are entitled to qualified immunity and dismissal.

**B.    It is not clearly established that the Fourth Amendment protects non-content electronic subscriber information retained by third parties.**

The defendants are also entitled to qualified immunity because it is not clearly established that the Fourth Amendment protects non-content electronic subscriber information retained by third parties. Patel's contrary arguments are mistaken.

Patel relies exclusively on *Carpenter v. United States*, 585 U.S. 296 (2018), for the proposition that the Fourth Amendment clearly protects non-content subscriber information such that the defendants had fair warning of the unlawfulness of the subpoena here. *See* Opp., at 17. He is mistaken. First, as Patel acknowledges, *Carpenter* was not decided until after issuance of the subpoena here. *See id*. That forecloses his reliance to argue for a clearly established constitutional violation. Whether qualified immunity shields an official action is "assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)) (additional citations omitted). Cases "that postdate the conduct in question" cannot give "fair notice" of what is unlawful and "and are of no use in the clearly established inquiry." *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam); *see, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("The question of [Attorney General] Mitchell's immunity turns on whether it was clearly established in November, 1970, well over a year before *Keith* was decided, that such wiretaps were unconstitutional. We conclude that it was not.").

14

Second, *Carpenter* does not in any event establish, let alone clearly establish, the unlawfulness of the subpoena at issue. In *Carpenter* the Supreme Court decided that "the acquisition of Carpenter's" cell-site location information "was a search," and "also conclude[d] that the Government must generally obtain a warrant supported by probable cause before acquiring such records." 585 U.S. at 316. The Supreme Court described its decision as "a narrow one," that "d[id] not express a view on matters not before us[.]" *Id*. It also did not disturb the third-party doctrine under which "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id*. at 308. (citing *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *United States v. Miller*, 425 U.S. 435, 442-44 (1976)). And the lower federal courts have uniformly held that *Carpenter* does not apply to other non-content electronic subscriber information retained by third parties. *See, e.g.*, *United States v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020); *United States v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019); *United States v. Bledsoe*, 630 F. Supp. 3d 1, 14 (D.D.C. 2022); *United States v. Cox*, 465 F. Supp. 3d 854, 855 (N.D. Ind. 2020). This state of the law entitles the defendants to qualified immunity.

## III.   Patel is not entitled to injunctive relief or attorney's fees.

As explained in our opening memorandum, Patel has no grounds for seeking equitable relief or attorneys' fees. His complaint does not allege a Fourth Amendment violation, and in any event equitable relief is not available in a *Bivens* action. *See* Mem., at 26. Patel also lacks standing to seek equitable relief for past harm, or to seek an injunction limiting or barring the defendants' participation in hypothetical future proceedings involving him. *See id*. at 26-30.

15

In response Patel argues that he has standing because he seeks to "have his privacy restored by the destruction of wrongfully obtained information, and to protect his privacy in the future by barring specific persons from participating in any possible future proceedings." Opp., at 19. His arguments are mistaken.

Patel cites no authority for the proposition that federal courts may exercise their equitable powers to restrict particular government personnel from participating in criminal investigations or proceedings or to order the destruction of unlawfully seized evidence as a remedy against its possible use in a hypothetical future case. The first form of relief would violate the principle that the Executive Branch exercises "exclusive authority and absolute discretion" with respect to the conduct of criminal investigations and prosecutions. *See Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006), *as amended* (May 16, 2006) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see also* 28 U.S.C. § 516 (conduct of litigation reserved to the Department of Justice); § 519 (Attorney General's exclusive authority to supervise litigation). And both forms of relief presuppose some future federal investigation or proceeding and further, that these particular defendants will play a role in it. "[T]his combination of events" is "too speculative to support standing for injunctive relief." *Chang v. United States*, 738 F. Supp. 2d 83, 89 (D.D.C. 2010) (discussing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Patel cites no cases to the contrary or that otherwise support the relief he seeks.

Patel also does not explain how an injunction requiring the government to destroy evidence obtained through the subpoena would not impermissibly interfere in a future investigation or prosecution such as the one he seems to hypothesize. *See* Mem., at 28-30; *cf. Pennsylvania Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 362 (1998) (observing that a Fourth Amendment violation occurs at the moment of the illegal search or seizure and that the subsequent use of the evidence obtained does not per se violate the Constitution). His reliance on *DeBrew v. Atwood*, 792 F.3d 118 (D.C. Cir. 2015), *see* Opp., at 18, in support of an injunction ordering the destruction of records is misplaced. *DeBrew* held that a federal prisoner had standing to pursue a claim that prison officials violated the Fifth Amendment's takings clause by retaining interest on inmates' prison deposit accounts. The inmate's claim that "the defendants took money that belongs to him" was "a 'concrete and particularized' injury." *DeBrew*, 792 F.3d at 125. That is different from Patel's claim that government officials caused a subpoena to issue to third parties and that the evidence obtained thereby should be ordered destroyed. As already explained, Patel's claim based on the subpoena to third parties does not allege a constitutional violation. Accordingly, the equitable relief he seeks is not available as a matter of law. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976).

## CONCLUSION

The defendants' motion to dismiss should be granted, and this action dismissed.

Respectfully submitted this 29th day of March 2024.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
siegmund.f.fuchs@usdoj.gov

Attorneys for the Defendants

18